3-23-0257 Aaron Shirley Appellant v. Village of Clarendon Hills Police Pension Fund, et al., Appelese. Thank you. Good morning, or good afternoon. Good afternoon, Your Honors. Good afternoon. Good afternoon. Mr. Figlioli, would you like to start? Yes, Your Honor, that would be fine, thank you. May it please the Court, Mr. Labarde, Ms. Shannon, my name is David Figlioli. I represent Sergeant Aaron Shirley in this case. I first would like to start out by just making a broad policy statement. Certainly, I think that's consistent with my briefs filed in this case. It's my position that no administrative agency, in this case a pension board, should have the authority to dictate that a person must undergo an invasive medical procedure in order to receive benefits under a statutory scheme. And again, in this case, would be the Illinois Pension Code. It's my position and my belief that the case that has been utilized by the pension board, in this particular case, the seminal case of Mulock, has been expanded beyond what I think that court really ruled on at that time. And that case involved whether or not an individual that had a surgical procedure or recommended surgical procedure that chose to go through some additional physical therapy, rather than undergoing the surgery, was denied benefits. And the court said that that was not appropriate. And that dealt with physical therapy. It did not deal with an invasive surgical procedure, as was suggested in this particular case. And I believe that more recent cases in the workers' compensation arena, which Mulock utilized to support their rationale, have identified that. We have the cases that we've cited, Rockford Clutch, Eastone Steel & Wire, Allied Chemical, Bob Red Remodeling. They've all taken the position in the workers' comp case law and arena that invasive surgical procedures, they cannot force injured workers to undergo those invasive surgical procedures. And they've discounted the position outlined by Mulock, which utilized cases from 1917 and 1920 to rationalize that particular position. There's also some pension code cases more recently, Lucezzi, which is a 2002 case, Rozak, which is a 2007 case, where they distinguished Lee Dicta and Mulock, and in essence, said that it was reasonable for these individuals to refuse invasive surgical procedures and still be entitled to receive their pension benefit. And I believe, just generally speaking, the pension code, the legislature has provided this code and to provide protections, greater protections to first responders, police officers, firefighters, than the workers' comp system. And it's a remedial statute. It should be, a deference should be given to the applicant in this particular case. Now, my second argument, as outlined in my brief, is it's my position that Sergeant Shirley's decision not to undergo the surgical procedure to his right shoulder was reasonable, and that the pension board decision that he unreasonably refused to undergo that surgical procedure warranted a denial of benefits. Now, generally speaking, fortunately not based on my personal experience, but family experiences and everyone I'm sure would agree with this, all surgical procedures are invasive. They all have inherent risks. Every physician that I know of would explain that to their patients before getting an answer as to whether they want to undergo a surgical procedure. They explain the risks. They explain what will occur. They don't guarantee the outcome. They even have patients sign these consent to release forms or consent forms where they identify these particular risks. Why would they do that if they didn't take a position or understand that there are these risks to invasive surgical procedures? The doctors in this particular case, as all doctors would, they do identify the risks of the surgical procedures. The risk of an adverse reaction to anesthesia, an infection that could occur, scar tissue could develop, stiffness in the joint, residual pain, the need for reoperation because the initial injury or initial surgery did not take and ultimately repair the injury. And then to say that this type of surgical procedure is not painful, does not cause suffering, I think is clearly a misstatement. This procedure is done through portals, multiple portals. If they use anchors to repair the labral tear, they have to drill into bone and place these anchors. There's extensive physical therapy afterwards. There's immobilization for a month, as the doctors say. That clearly, I believe, establishes that, again, an invasive surgical procedure, there are these risks, and it's not something that is easily recovered from. So, Mr. Figlioli, your position is, first, that no surgery should be required ever in these cases, but secondly, that in this particular case, the surgery is too risky and it's not reasonable to impose it. No, my position is a surgical procedure is an invasive medical treatment, course of medical treatment. The applicant in this case, or any applicant, should be allowed to make a decision that they don't want to have the surgery. It's as simple as that. We have people that are deathly afraid of the dentist or deathly afraid of needles. Is that unreasonable from my perspective? Yeah, I guess it is, but from their perspective, that's a legitimate concern and a legitimate fear. Should those people automatically be precluded from receiving benefits because they choose not to undergo that invasive medical procedure? The doctors have also said there are risks to this. So, Dr. Phillips even quantified it. He said, well, 95% of these surgeries are successful. What about the 5%? Is there some crystal ball that conceivably the pension board in this particular case can say, Sergeant Shirley is going to be in that 95%? We know he's not going to be in that 5% to have an adverse outcome. That's pure speculation. What they need to look at and what they didn't look at is, as I believe Coyne said, is you look at the total course of treatment. What was the total course of treatment? And then determine whether the person's choice not to have the invasive surgical procedure is reasonable looking at the entire course of treatment. In this particular case, Dr. Burra, his treating doctor, said, listen, you can pursue a conservative course of treatment or you can go and have surgery. There's no doctor that in the records of this case say that undergoing the conservative treatment was unreasonable. None of them say that. I'm sure they would give their patients the same options. You can have conservative treatment or you can have your surgery. And they certainly wouldn't penalize their patients for saying, well, you know what, I want to go through the conservative treatment and I'll end up where I end up after concluding the conservative treatment. And that's what Sergeant Shirley did in this particular case. Now, it's kind of interesting, the board and the village in their briefs bring out this reference, which there's no support in the record that Sergeant Shirley is saying, I wanted to guarantee that this surgery would be successful. I can't find it. There's no citation to the record. Okay. He never made that reference. He never made that representation. But I'll point out to you, the table has kind of been turned because the pension board has taken a position that, hey, this surgery we believe will absolutely guarantee that Sergeant Shirley will fully recover and return back to full duty performing police work. That's what they're saying. We believe that he will fully recover and return back to work if he has this surgery. That's pure conjecture and speculation. No doctor has said that. There's no opinion saying that in this particular record. So how could they arguably say, if you go undergo the surgical procedure, you will be able to go back to full duty work? Absolutely. We know that. We can't, they can't take that position. They talk about the fact that Sergeant Shirley has concerns about, he knows people that ultimately have had this surgery, didn't recover. We all know people that had certain surgeries that didn't have a good recovery. Why do we have to prove that? That's common knowledge. He has these migraines. That's a particular problem as well. He said when I'm under high stress situations, I have conceivably I can develop migraines. Well, going through a surgical procedure is clearly high stress. His concern is he might have migraines after that or recovering from that. That's a legitimate concern. The issue with respect to whether his decision not to have the surgery is considered to be a superseding intervening cause, I think that's a red herring. I think that argument has no basis in law. When you look to the workers' comp cases that have been cited that identify what is an intervening superseding cause, that's not present in this case. National Freight gives us four factors to look at. Did the symptoms change after a second accident? In National Freight, a truck driver suffers a first injury. He has a herniated disc. The doctor recommends treatment, possible surgery. He holds off on that. He then ultimately works for another employer, has another injury, a motor vehicle accident, has to have the surgery now. The question was, who's responsible for that? Is it still on the first injury or is it on the second injury? And the court said, when you look at that, did the symptoms change when they had the second accident? The second factor was, was there a change in the pathology as a result of the second accident? Did the treatment recommendations change after the second accident? Did the patient's ability to return to work or ability to work change after the second accident? None of this is present in this particular case. Sergeant Shirley, we all agree, there's no dispute, he has a labral tear in the right shoulder. And that resulted from a performance of an act of duty. That did not change at all when he chose not to have the surgery. How could that be an intervening, superseding cause? Now, also, when you look at the more recent case, Rozek and Lucchesi, they talk about, well, even if it is a cause, it isn't the sole cause leading to the disability. Sergeant Shirley's disability was caused by the original incident when he was trying to restrain the juvenile on the cot or the stretcher in order to have him evaluated. That's what caused the injury. The fact that he's not choosing to undergo the surgery, if that is another intervening cause, it's only one of the causes. It doesn't cancel out completely the original cause, which was the injury occurred in the performance of an act of duty on that particular day, the accident. And we know the case law is very clear. We only need to show one, a cause, not the sole or only cause, but a cause leading to the disability. And then finally, my argument with respect to a non-duty disability. The statute is clear. The statute has a language that says if someone's disabled for any cause or as a result of any cause or nature, then that police officer is entitled to a non-duty disability pension benefit. I don't believe the language of MULAC or the interpretation of MULAC would say that this person is not entitled to a non-duty disability pension. We have the cases where, you know, somebody suffers a, we have a multitude of cases with respect to psychological injuries and whether it's general work stress or other stressors of a particular traumatic incident. If it's non-work related, they're entitled to a non-duty disability pension benefit. That's what this board is saying is disabling condition is no longer related to the incident, but it's now related to his decision not to have an invasive surgical procedure. How does that preclude him from being awarded a non-duty disability pension benefit? So my position, I would argue that the board's decision is against the manifest weight of the evidence with respect to Sergeant Shirley's decision was unreasonable. My position, and it was reasonable when you look at the entire facts and you look at the entire course of treatment. In the alternative, if you find that he's not entitled to a line of duty disability pension benefit, then clearly he would be entitled to a non-duty disability pension benefit. Thank you. Thank you, Mr. Figlioli. Mr. Labarde, are you going first? Yes, please, Your Honor. All right, and you have eight minutes. Thank you. May it please the court. My name is Brian Labarde, and I represent the Clarendon Hills Police Pension Fund and the Board of Trustees. I think the most important thing to remember here is the pension board is not advocating for a position that would require an officer to have a surgery in order to be awarded a disability pension benefit in this case. What the correct question is, has the applicant, has Sergeant Shirley produced any evidence to demonstrate that his refusal to have the surgery is reasonable? And it's the board's position in this case that there was no evidence presented to illustrate that his refusal to have that surgery is reasonable. If you look at the course of treatment for the police officer in this case, he underwent two sessions of physical therapy, essentially, following the injury on his shoulder. He was discharged from the physical therapy. And the reason why he was discharged from the physical therapy is his treating physician, Dr. Burra, told him, this injury will not get better absent surgery. There is nothing more we can do for you absent having this surgery. So there's no point in continuing a course of physical therapy. If you look at the testimony of the officer from the hearing before the pension board, when he was asked, why did you choose to end your treatment with physical therapy and not elect to have the surgery? He gave two reasons. He gave this neurological slash migraine condition that was referred to earlier as a basis for I shouldn't have surgery because I have to avoid stressful situations. There is evidence in the treating records in the in the in the treating records of the police officer that are in the appellate record to show that he does have some sort of migraine condition. But what's lacking, and the applicant admitted this in his testimony, is there is no medical evidence that would suggest this condition, whatever it may be, would preclude him having the surgery that was recommended. No doctor has said you should not undergo this procedure because of this migraine slash stress condition that you claim to have. The other reason he gave for electing to forego any further treatment or any or the surgery was essentially that he had heard from other we don't know who it was. He didn't identify it in his testimony, friends, acquaintances, relatives, whomever, that they'd had a similar surgery and it didn't help or it made the condition worse. I would submit that it is not a reasonable determination to forego a surgical procedure that has been unanimously recommended by his treating physician and the pension board doctors on the basis of some sort of lay opinion or hearsay or again we don't know where he where he got those opinions from. But that was his testimony before the pension board. So again, the position of the board is not that he's required to have a surgery, but rather that his refusal to do so under these circumstances is unreasonable because he's not able to point to any evidence to form a reasonable refusal for that treatment. Mr. Lombardi, did the pension board doctors indicate there were any risks to this surgery at all? They did. The risks that were identified by the pension board doctors, which of course are in the record, were essentially paraphrasing the risk associated with any surgery, a small risk of infection, a small risk that the surgery may need to be repeated. And to that point, Justice Davenport, the standard under the case law is not that you have to have a guarantee of success. The standard is whether or not the proposed procedure offers a reasonable prospect for relief. So we don't need a we're not required to have a risk free surgery. It's not a guarantee that you absolutely 100 percent will come back to police duty if you have this surgery. As the case law says, and I think everyone would agree, no doctor is ever going to give you that sort of a guarantee. That would be an unreasonable standard to attempt to implement. Rather, it's whether you are likely to return. And again, the unanimous opinions in the medical records, both the pension board physicians and his treating physicians, say that it's very likely he's going to return, that the risk is very minimal. It's an arthroscopic surgery, so risks are minimized. And one of the doctors also noted that found that the officer had a credibility issue, basically finding, I'm not sure that he wants to go back to work because presumably if you were in pain, you would want to have this surgery to alleviate your pain. That's the pension board's IME for Dr. Phillips. The other thing that I would note is the case law that Mr. Figlioli cites. It's important to note that a lot of the workers' comp cases he discusses are workers' comp cases and not police or fire pension cases. Now, a lot of those have been adopted as they were in the MULAC case. However, I would suggest in grafting these other cases, most of which existed at the time the court wrote their opinion in MULAC, is essentially asking for an extension of that law. For example, we talk about the COIN case in our brief. COIN was a psychological disability, not a surgical case. And in that case, the appellate court found that the board's denial was unreasonable, but the reason there was because it was based on one physician and other physicians had suggested another course of treatment. Here, all the physicians agree there is no other course of treatment. You're either going to not get better and maintain your current state where you clearly are disabled and you cannot be a police officer, or you're going to have the surgery, which does offer a prospect for relief. Likewise, the ROSAC case was a shoulder surgery where the police officer had a surgery and then later refused to do physical therapy. I think the difference in the surgery cases that we have here is, in this case, the applicant didn't attempt a surgery. He has to at least try to get back to duty if he's going to avail himself of the disability benefit available under Article 3 of the Pension Code. And in all the cases that discuss surgery or that discuss a potential surgical procedure, the officer had a surgery with one exception. There was one exception, which was the MULAC case. In that case, the officer did PT and didn't have a surgery. But if you look at the facts of that case, that was different because the doctors in that case said, you're progressing with physical therapy, you're doing well, we think you should keep doing physical therapy and then decide whether you want to have a surgery. So in that case, it was unreasonable. Mr. Lombardi, how many sessions of physical therapy did he conclude in the two times that he attended or the two treatment programs? Your Honor, my notes indicate that he had two sessions of 12 each. So I believe the record would show he had 24 physical therapy sessions. I see that my time is almost up. So I'm happy to answer any other questions, of course. But for the reasons stated in our brief, we would ask that this court affirm the trial court's decision, which affirmed the Pension Board's decision, denial of benefits. Thank you. Are there any questions for Mr. Lombardi? Other questions? No. Thank you, Mr. Lombardi. Ms. Shannon, you have seven minutes. May it please the court. My name is Colleen Shannon. I represent the appellee, the village of Clarendon Hills. The village's position on everything is really no different from the position that was stated by the Pension Board. And I concur with all the arguments that have been made by Mr. Lombardi. And actually, I don't really have anything further to add outside of what he stated and what's contained in our briefs. Okay. Are there any questions specifically for Ms. Shannon? Seeing none, thank you very much. Mr. Figlioli, any rebuttal? Yes, please, if I may, just a few minutes on that. You know, Mr. Lombardi said that, and I think he mischaracterizes this, he said that Dr. Burra, Sergeant Shirley's treating orthopedic specialist, recommended the surgery to his shoulder. I don't believe that that is accurate. I think my position is in my interpretation and looking at the medical records is Dr. Burra, like any doctor would say, you have choices. You have options on how to treat this injury. You have a conservative approach. You can try that. And then you have a more aggressive approach that would entail an invasive surgical procedure. That's what was offered to Sergeant Shirley by Dr. Burra. Sergeant Shirley then chose to have the conservative course of treatment. And again, you have to look at all of the course of treatment to determine whether it was unreasonable to forego any option that was offered to you. Just like in COIN, which was a psychological condition, the applicant in that case said, I didn't take some of this medication because it made me loopy or something like that. But he was compliant in other aspects of the course of treatment, psychological sessions, things of that nature. And the court said, you have to look at the entire course of treatment. In this particular case, again, Sergeant Shirley, it was not unreasonable for him to say, you know what, I want to choose conservative treatment and exhaust that. And then where I end up is where I end up. Again, the doctors, Dr. Obermeyer, Dr. Phillips, Dr. Williamson-Link, they didn't offer any opinions that only pursuing the conservative course of treatment was unreasonable. There is no opinion by any of the doctors that that is an unreasonable choice. And again, as long as you are informed as the patient and you weigh all of these options, these factors, then how could a board sit there and say, we think, Sergeant Shirley, you are unreasonable in deciding to forego the surgical procedure? Which doctor said that if you continue to pursue therapy, you'll get better? Justice McDade, I don't believe any doctor stated that if you continue to pursue therapy, you're going to get better. The doctors have said, listen, you have a labral tear, right? In order to repair a labral tear, you'll need a surgery. Physical therapy doesn't repair the tear, but physical therapy can strengthen the muscles and the joints and the tendons so that the repercussions of the labral tear will have less impact on the particular joint and activities, things like that. So that's my recollection of what was offered. And he did exhaust the physical therapy. He reached a point where he plateaued and there was no more therapy to be offered that could improve his condition. So I believe Dr. Burr recommended a functional capacity evaluation. He did that. It showed his deficits. He was released with permanent work restrictions. And again, it's hard to believe that any court will accept the pension board's determination that we believe if Sergeant Shirley has the surgery, that absolutely he's going to recover fully and go back to work as a police officer. Nowhere in the record is that stated. No doctor will say that. How can a lay person state that position? And even in the one case of, I believe I cited it in my reply brief, Keystone, that was an individual that had an unrealistic fear of undergoing surgery. And the court basically said, hey, you know, that's not unrealistic. And in this particular case, we believe that Sergeant Shirley weighed the risks, benefits of surgery, the conservative treatment, and reasonably decided he wanted to forego the invasive surgical procedure. I would ask that the court reverse the pension board's determination as being against the manifest way to the evidence. Thank you. Are there any questions for Mr. Figlioli? We thank all three of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.